# Haddington Methodist Episcopal Church *versus* City of Philadelphia, to use, etc.

1. The lien of a municipal claim can only be preserved by a revival by scire facias within each recurring period of five years.

2. Upon the expiration of five years after any judgment of revival of the lien of a municipal claim, the lien is lost, and cannot afterwards be restored by scire facias to revive said judgment, although the defendant remain the owner of the premises against which the claim was filed. The judgment was a statutory judgment *in rem*, which created no personal liability on the part of the defendant; hence when that judgment expired by limitation of time, there remained nothing to support a judgment of revival, and if such a judgment be entered by default, the court should strike it off.

January 22, 1885. Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. GORDON, J. absent.

[Haddington Church v. Philadelphia.]

ERROR to the Court of Common Pleas, No. 2, of *Philadelphia county:* Of January Term, 1884, No. 411.

The record in this case showed the following:

1873. Municipal claim for paving, filed by the city of Philadelphia to the use of John Sunderland against the Haddington Methodist Episcopal Church, owner, and a lot of ground at the northeast corner of Haverford and Sixty-seventh Streets in the city of Philadelphia, containing in front on Haverford street 61 feet, and in depth 300 feet.

1877, March 12th. Scire facias sur claim. Made known by posting and advertising, and nihil habet as to defendant.

1877, October 1st. Judgment for want of an affidavit of defence.

1882, October 4th. Scire facias to revive judgment. Nihil habet.

1882, December 28th. Alias scire facias to revive judgment. Nihil habet.

1883, January 20th. Judgment for want of an affidavit of defense, on two returns of nihil habet.

——Rule to strike off judgment.

——Rule discharged.

The defendant thereupon took this writ of error assigning for error the entering of the said judgment of January 20th, 1883.

The scire facias to revive and alias scire facias to revive were in the ordinary form of writs of scire facias to revive a judgment, but specifically referred to the lot against which the claim had been filed, as the premises of which the debt was to be levied. There had been no change in the ownership of the lot in question.

*Alex. Simpson, Jr.*, for the plaintiff in error.—A municipal claim is a purely statutory remedy, and its lien and effect are given and controlled by the Acts of Assembly of April 16th, 1845, § 2, P. L., 488; June 16th, 1836, § 24, P. L., 701. The Act of 1836 provides that "the lien of every such debt for which a claim shall have been filed as aforesaid, shall expire at the end of five years from the day on which such claim shall have been filed, unless the same shall be revived by scire facias, *in the manner provided by law in the case of a judgment;* in which case such lien shall continue for another period of five years, and so from one such period to another, unless such lien be satisfied, or the same be extinguished by a sheriff's sale or otherwise, according to law."

What is revived by a scire facias is the lien of the claim, a lien *in rem*, and it is revived for five years, at the end of which period, unless sooner again revived, it is lost forever. The

defendants in error contend that having obtained a judgment on their first scire facias, that judgment had the effect of a common law judgment against the defendant, except that its lien was restricted to the land against which the claim had been filed, and that its lien was indefinite, so long as the defendant continued to be the owner of the lot bound, and could be revived as to the defendant and the lot in question, by a scire facias issued at any time within the common law presumption of payment. We submit that that premise is false. The judgment was a statutory judgment *in rem*, obtained without personal service on the defendant, and it therefore created no personal obligation before or after revival. The moment the lien expired as to the land it was dead, and incapable of resuscitation. The Act of 1836 prescribed only the " manner ", of reviving the lien of the claim, but not that a judgment that *that lien* was revived for five years should have the effect of a general judgment. The only object of a scire facias to revive the lien of the claim, and judgment thereon is "to have execution against the land: " Anshutz *v.* McClelland, 5 Watts, 491 ; Hunter *v.* Lanning, 26 P. F. S., 25 ; Hershey *v.* Shenk, 8 Id., 382 ; City of Philadelphia *v.* Scott, 12 Nor., 25 ; Ward *v.* Patterson, 10 Wr., 375 ; Penn *v.* Hamilton, 2 Watts, 53 ; Baldy *v.* Brady, 3 Harris, 109 ; Payne *v.* Craft, 7 W. & S., 464 ; Duncan *v.* Clark, 7 W., 224-5 ; Kerper *v.* Hoch, 1 W., 14 ; Loomis's Appeal, 5 Casey, 237.

This view is fortified by analogous statutes and decisions relating to mechanics' liens, by decisions in other states and by the universal principle that " a lien *in rem* once lost is lost forever."

*Edward G. McCollin* and *Joseph R. Rhoads*, for the defendant in error.—It is admitted that the defendant in the original judgment (plaintiff in error), against whom the claim was filed, is still the owner of the land bound by the judgment, and has been so continuously since said judgment was had October 1st, 1877. We submit that what was revived was a judgment entered for want of an affidavit of defence to a scire facias sur claim. It was not the lien of the claim that was revived, but the judgment given by the court upon the scire facias sur claim, after due service by posting and advertising. Since the subject of revival of January 20th, 1883, was the lien of a judgment and not the lien of a claim, the Acts of 16th of April, 1845, and 16th of June, 1836, cited by plaintiff in error, have no application to this case. The Acts refer to the revival of the lien of the claim only.

The Act of March 26th, 1827, sec. 1, 9 Sm. Laws, 303, is the Act relative to the point in dispute. That Act provides

" all judgments entered in any court of record of this Commonwealth," etc. Surely this language is broad enough to embrace the judgment entered in the case before us, whether it be *in rem* or *in personam*. There is no word of modification, of restriction or of distinction in this clause, or in any subsequent clause of the Act. The Act then goes on, "shall continue a lien on the real estate of the defendant for the term of five years from the day of entry or revival thereof; *and no judgment shall continue a lien on such real estate for a longer period than five years* from the day on which such judgment shall be entered or revived, unless revived within that period, etc., etc."

By the interpretation of these italicised words the case of the plaintiff in error must stand or fall. Since 1835 there cannot well have been any doubt as to what these words mean. In that year the Supreme Court decided the case of Fetterman *v.* Murphy, 4 Watts, 424. They were then discussing the interpretation of the above words as they appeared in the Act of April 4th, 1798, which the Act of 1827 supplemented and re-enacted. In delivering the opinion of the court, HUSTON, J., said: " No judgment shall continue a lien, etc., then has no relation to the defendant in the judgment; it leaves the rights of plaintiff, as to him, precisely as they were before 1798; but it limits the right of a creditor (unless he revives his judgment according to the Act and its supplement) to five years, as respects those who purchase or acquire subsequent liens on lands bound by the judgment."

So in Aurand's Appeal, 10 Casey, 151, the court say: " By interpretation of the statute of Westm. 2, a judgment binds the land had at the date of it, and without limitation of time. The creditor might have execution of it in the hands of his debtor at any indefinite period, while the judgment remained unpaid. Thus stood the law in Pennsylvania till the statute of 1798 restrained the lien of a judgment to a period of five years; but only in favor of purchasers from the debtor, and judgment creditors in his life-time ; it left it without bound or limit against every one else." See also Brown's Appeal, 10 Norris, 485; Hinds *v.* Scott, 1 Jones, 19; Irvine *v.* Nixon, 1 Jones, 419. In Hinds *v.* Scott (1849), a review is made by Mr. Justice BELL of the cases prior to that time, in which the above doctrine is laid down, and he expresses his surprise that any difference of opinion could exist with reference to the matter. These decisions have been re-affirmed in the late case of McCahan *v.* Elliott, 7 Out., 637, Chief Justice MERCUR delivering the opinion of the court, and saying: " The lien of a judgment, so far as concerns purchasers or intervening incumbrances, expires at the end of five years, yet

such is not the case with the defendant in the judgment. As to him the lien is indefinite."

The lien of the judgment in the case before the court, then, has never been lost—never could be lost as against the defendant in the judgment, the plaintiff in error, so long as they remained the owners of the property. And as the lien was never lost, the sci. fa. to revive issued after the five years had expired, was properly issued. It was properly a sci. fa. quære executionem non, its office being to give warning to defendant, before an execution could issue, and only necessary for that purpose, as the lien had never been lost.

Throughout his whole argument, plaintiff in error has failed to distinguish between the writs of sci. fa. sur claim, sci. fa. to revive the lien of the claim, and sci. fa. to revive the lien of the judgment. This is shown by the fact that the cases cited by plaintiff refer to the revival of the lien of the claim, and not to the revival of the lien of the judgment obtained by the due prosecution by scire facias upon that claim. Had plaintiff in error comprehended the distinction between these writs, we believe that this case would never have reached this court, nor would the attempt have been made by a Christian church to evade the payment of a just debt, to which there is no defence, by means of a technicality.

Mr. Justice CLARK delivered the opinion of the court, February 23d, 1885.

This controversy arises upon a municipal claim for paving, filed against the Haddington Methodist Episcopal Church, by the city of Philadelphia. The claim was filed on the 22d of May, 1873. A scire facias issued March 12th, 1877 and a judgment was entered thereon October 1st, 1877. On the 4th October, 1882, which was more than five years from the rendition of the judgment, a scire facias issued upon the judgment to revive the lien; this was followed by an alias, and both of these writs having been returned *nihil habet*, judgment was entered by default on 20th Jan'y, 1883. The court upon proper application made, refused to strike off the judgment and hence this writ of error.

The plaintiffs below contend, that when judgment is once entered on a scire facias sur claim it has the properties and effect of an ordinary judgment, except that the lien is restricted to certain property; that a subsequent revival is not a revival of the claim, but of the judgment, under the Act of 26th March, 1827; that therefore, the Acts of 16th June, 1836, and 16th April, 1845, relating to the revival of the liens, have no application, whatever, to the case. The defendants below contend, however, that as the proceeding is purely in

rem, if the property is once relieved of the burden it cannot by scire facias thereon be again charged. This is the distinct and single question presented upon this record.

The lien of a mechanics' or municipal claim being by statute, its validity, duration and extent are wholly dependent upon a compliance with the statutory provisions, which are so far as they relate to this case as follows:

Act 16th April, 1845, sec. 2, P. L. 488; Purd. 1089 pl., 24:—"No debt, charge or assessment, for work hereafter done or materials furnished by or under the authority of the board of health, or any municipal corporation, shall be a lien on real estate for more than six months, from the time of doing such work, unless a claim for the same shall be filed in the office of the prothonotary of the proper court within that time, nor shall the same continue a lien longer than five years from the time of filing the claim, unless revived by scire facias in the manner provided by law in the case of mechanics' claims."

Act 16th June, 1836, sec. 24, P. L. 701; Purd. 1036, pl. 57, relative to mechanics' claims:—"The lien of every such debt, for which a claim shall have been filed as aforesaid, shall expire at the end of every five years from the day on which such claim shall have been filed, unless the same shall be revived by scire facias in the manner provided by law in the case of a judgment; in which case, such lien shall continue for another period of five years, *and so from one such period to another*, unless such lien be satisfied," &c.

The specific form of the scire facias for both classes of liens is prescribed by the 15th section of the Act of 1836; it is substantially a command to make known to the defendant, that he show cause why the sum demanded should not be levied of the property charged. A scire facias to revive in the ordinary form is properly issued after the judgment is obtained. It appears, then, that municipal claims are to be "revived by scire facias in the manner provided by law in the case of mechanics' claims," and mechanics' claims are to be "revived by scire facias in the manner provided by law in the case of a judgment." The method of procedure is thus defined, but although revival is effected in the same form, the lien of the claim, either before or after judgment thereon, is of a widely different nature from that of an ordinary judgment.

A judgment in general is for the defendants' debt, and involves a personal obligation; the proceedings to obtain it are *in personam;* unless restricted in terms it is a lien upon all the defendants' property within the jurisdiction, and is without limitation as to the defendant, his heirs or devisees. When the lien of such a judgment is said to expire, it simply loses its lien as to subsequent judgment creditors and purchasers;

[Haddington Church *v.* Philadelphia.]

the personal obligation of the defendant, and the lien against him, continues; hence when the lien is lost as to third persons it may be again restored. There is still a subsisting liability on the part of the defendant which will sustain an action, and scire facias is the form of action prescribed by law. But a mechanics' or municipal lien does not purport to be for the debt of the defendant; it is a proceeding against the property for the debt of the property; it involves no personal obligation whatever; the proceeding for its enforcement is purely *in rem;* it is a specific property lien, and when that lien is lost against the property it is a lien against nothing, whilst it is for the personal debt of no one. No action in the form of scire facias, therefore, can be sustained upon it. We are thus enabled to appreciate the full force and meaning of the phrase "and so from one such period to another," employed in the 24th section of the Act of 1836. · It is in that section provided that in case the lien of the debt or claim shall have been revived, as a judgment is revived, within five years by writ of scire facias, "such lien shall continue in like manner for another period of five years, *and so from one such period to another* unless such lien be satisfied," &c. This phrase is not found in the Act of 1827, and it is utterly without force or signification unless, it be understood as recognizing the necessity of a scire facias within each recurring period of five years.

It has been urged in the argument that this lien had been reduced to judgment; that the provisions of the Act of 1827 cover "all judgments," and that therefore under the construction heretofore put upon that Act in a long line of cases extending from Fetterman *v.* Murphy, 4 Watts, 424, to McCahan *v.* Elliott, 7 Out., 637, the lien must be without limitation as to the defendant, his heirs and devisees. It must be borne in mind, however, that judgments recovered upon mechanics' and municipal liens, mortgages, recognizances in the Orphans' Court as to the lands of the principal cognizor, &c., are not themselves liens as of the date of their entry, they simply give effect to the lien of the original debt, or lien which they represent, respectively, as a means of enforcement and collection; therefore it is that the lien of mechanics' or municipal claim —when referred to in the various Acts of Assembly—even after judgment, is expressed as the lien of the debt or claim and not of the judgment.

We are of opinion, therefore, that the lien of a municipal claim can only be preserved against the property charged by a revival within each recurring period of five years.

The judgment is therefore reversed and a venire facias de novo awarded. ·